IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED

98 MAY 20 AM 10: 57

U.S. DISTRICT COURT
N.D. OF ALABAMA

ELAINE ROBERTS,                        )

        PLAINTIFF,                     )

VS.                                    )       CV97-H-0978-E

JACKSONVILLE STATE UNIVERSITY,  )
DON THACKER; DR. HAROLD
McGEE; and RANDY HARPER,        )

        DEFENDANTS.                    )

**ENTERED**

MAY 2 0 1998

### MEMORANDUM OF DECISION

The court has before it the February 24, 1998 motion for

summary judgment filed by the defendants Jacksonville State

University ("JSU"), Don Thacker, Dr. Harold McGee and Randy

Harper.  Pursuant to the court's February 26, 1998 order, the

motion was deemed submitted for decision, without oral argument,

as of March 26, 1998.

In moving for summary judgment, defendants assert that

plaintiff's claims are beyond the statute of limitations, that

plaintiff uses improper comparators who are not similarly

situated to plaintiff in claiming that she was discriminated

against in pay because of sex and that plaintiff has no evidence

to establish that she was discriminated against in her pay

because of sex.  Defendants also assert the defenses of qualified

immunity, sovereign immunity, Eleventh Amendment immunity and

47

discretionary function immunity.  In support of their motion for summary judgment, defendants filed a brief on February 24, 1998 and a supplemental brief on March 9, 1998, along with their evidentiary submissions.[1]  In opposition to the motion for summary judgment, plaintiff filed her evidentiary submission[2] on March 19, 1998 and then filed a brief in opposition to the motion on March 27, 1998.

Plaintiff commenced this action by filing a complaint in this court on April 21, 1997 alleging that defendants discriminated against her based on sex in violation of Title VII, 42 U.S.C. § 2000e *et. seq*, 42 U.S.C. § 1983, and the Equal Pay Act, 29 U.S.C. § 206(d)(1).  In the complaint the plaintiff alleges that defendants intentionally discriminated against her by paying her less than similarly situated male employees and that defendants retaliated against her after she complained to the defendants' EEO compliance officer about sex discrimination

---

[1]Defendants' evidentiary submission includes the affidavits of Gary Dempsey, Karen Davis, Donald Thacker, Cheryl Norred, and Bascom Woodward and the depositions of Donald Thacker, Randy Harper, Sean Ponder, Harold McGee, and plaintiff and various exhibits connected with these affidavits and depositions.

[2]Plaintiff's evidentiary submission includes affidavit of plaintiff, defendants' EEO Policy, plaintiff's EEOC charge, various internal memoranda and reports and excerpts from personnel files.

and violations of the Equal Pay Act.

### Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  If the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at

4

trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  If the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.   The affirmative showing may be accomplished by reference to any combination of the following: pleadings; deposition testimony of a party or its witness; affidavits; responses to interrogatories or failure to respond to interrogatories; requests for admission and responses thereto; and other exchanges between the parties

5

that are in the record.  See Clark v. Coats & Clark, Inc., 929
F.2d 604 (11th Cir. 1991); see also Celotex, 477 U.S. at 332
(Brennan, J., dissenting).  If the movant meets its initial
burden by using this second method, the non-moving party may
either point out to the court record evidence, overlooked or
ignored by the movant, sufficient to withstand a directed
verdict, or the non-moving party may come forward with additional
evidence sufficient to withstand a directed verdict motion at
trial based on the alleged evidentiary deficiency.

     The Eleventh Circuit has stated that district courts should
use caution when taking employment discrimination cases away from
the trier of fact by means of summary judgment.  Isenbergh v.
Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1384 (11th
Cir. 1996).  However, the Eleventh Circuit also recognizes that
"[s]ummary judgments . . .are not rare in employment
discrimination cases."  Earley v. Champion International Corp.,
907 F.2d 1077, 1080.  "Summary judgment procedure is properly
regarded not as a disfavored procedural shortcut, but rather as
an integral part of the Federal Rules as a whole, which is
designated 'to secure the just, speedy and inexpensive
determination of every action.'"  Celotex Corp. v. Catrett, 477
U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  Given the ease of

                              6

complying with the notice pleading requirements in asserting a discrimination claim, the Eleventh Circuit encourages district courts that "plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent." Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995).

Where, as here, a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a *prima facie* case of discrimination.[3] Second, after plaintiff has presented a *prima facie* case, the burden of production shifts to the defendant, requiring an articulation of

---

[3] In order to present a *prima facie* case of discrimination, plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she either applied and was qualified for a position for which the employer was seeking applicants or was satisfactorily performing the duties of the job; (3) that he or she was rejected or terminated; and (4) that, after the rejection, the position remained open and the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802. Based on O'Connor v. Consolidated Coin Caterers Corp., ____ U.S. ____, 116 S.Ct. 1307, 1310 (1996), plaintiff need not show that the position at issue was filled by a person outside the protected class.

7

some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).   "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted."  <u>Brown v. American Honda Motor Co., Inc.</u>, 939 F.2d 946, 950 (11th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1058 (1992) (quoting <u>Grigsby v. Reynolds Metals Co.</u>, 821 F.2d 590, 596 (11th Cir. 1987)).

     Once the defendant presents legitimate, nondiscriminatory reasons for its action, then the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination, and to persuade the fact-finder that the defendant intentionally discriminated against the plaintiff.  <u>McDonnell Douglas</u>, 411 U.S. at 804.   In other words, "[a]fter a Title VII plaintiff makes out a prima facie case, and the defendant produces a legitimate nondiscriminatory explanation for its actions, the McDonnell-Burdine presumption drops from the case.  At that point, the inquiry is whether the defendant intentionally discriminated against the plaintiff."  <u>Harris v. Shelby County Board of Education</u>, 99 F.3d 1078, 1083 (11th Cir. 1996).

     "[B]ecause the plaintiff bears the burden of establishing

8

pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (other citations omitted) (alterations in original).   "At the summary judgment stage, once an employer articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to plaintiff to raise a genuine factual question as to whether the stated reason is mere pretext."   Cortin v. Southland Int'l Trucks, 25 F.3d 1545, 1550 (11th Cir. 1994); Hairston v. Gainesville Sun Publ. Co., 9 F.3d 913, 920 (11th Cir. 1993).

Plaintiff may prove that the defendant intentionally discriminated against him either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy or credence."   Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989).   "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination."   Brown, 939 F.2d at

9

950. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh, 97 F.3d at 444 (quoting Young, 840 F.2d at 830).

The following facts in this case are undisputed or where disputed are viewed in light most favorable to the plaintiff. JSU is a state-supported university. Dr. Harold McGee has served as President of JSU since 1986. See defendants' exhibit 9, McGee depo. p. 5. Don Thacker serves as Vice President of Business Affairs at JSU and prior to that served as Executive Assistant to the President. See defendants' exhibit 6, Thacker depo. pp. 5-6. Randy Harper serves as Acting Executive Director of Data Systems Management Division at JSU, a position he has held since 1991. See defendants' exhibit 7, Harper depo. p. 52.

In December of 1987, plaintiff applied for a part-time job with the JSU bookstore and shortly after that Claude Gaddy, a JSU supervisor and acquaintance of plaintiff, contacted plaintiff about a job opening for which he wanted plaintiff to apply. See defendants' exhibit 10, plaintiff's depo. pp. 16-17. The job was for manager, university telecommunications and according to

10

plaintiff, Gaddy told plaintiff that he was "looking for a good woman" to run the office. See id. at 23. Plaintiff has an honors degree from high school and never completed any college courses. See id. at 13. Plaintiff previously worked for a credit bureau as a sales representative where she was part of the management staff. See id. at 10-11.

On January 15, 1988, Claude Gaddy went to JSU's Personnel Council and requested a downgrade in the position of manager, university telecommunications and an upgrade in the position of communications equipment technician. See defendants' exhibit 4, exhibit 1 to Norred affidavit. At that time the Council tabled the request and the meeting notes indicate that Gaddy had been before the Council in July and October of 1987 concerning the two telecommunication positions. See id. At the Personnel Council meeting on January 19, 1988, Gaddy explained that the manager position was "basically an administrative position but that the person would be working some with the computers in the office." Id. Gaddy informed the Council that he felt sure he could hire someone for the manager position at the downgraded level. See id. On motion by Randy Harper, the Council voted to downgrade the manager position and upgrade the technician position. See id. On January 20, 1988, plaintiff's employment as manager,

11

university telecommunications was authorized and plaintiff began work on January 22, 1998.  See id.; defendants' exhibit 1, exhibit C to Dempsey affidavit.  Plaintiff's starting salary in 1988 was $18,762.00 and at the time of her deposition in 1997 was $29,268.00.  See defendants' exhibit 10, plaintiff's depo. at p. 28; defendants' exhibit 1, exhibits B and C to Dempsey affidavit. Plaintiff's job evaluations have been above average and exceptional throughout her employment at JSU.  See defendants' exhibit 1, exhibit C to Dempsey affidavit.

In April of 1991, Dr. Gene Sherron performed a review of telecommunications at JSU and recommended that the university review and revise the job descriptions of the employees in the telecommunications department to bring the descriptions up to date with existing circumstances.  See plaintiff's exhibit 6, p. 3.  Dr. Sherron also recommended that the university implement salary adjustments for the three employees in telecommunications as their salaries were low by national standards.  See id. at 4. In June of 1991, executive director of the Data Systems Management Department, Jimmy Green, recommended to Dr. Harold McGee, President of JSU, that plaintiff's salary be increased from $21,299 to $29,889 based on Dr. Sherron's recommendations. See plaintiff's exhibit 5.  Green also recommended a salary

12

increase for Keith Riley, communications equipment technician.
See id. Plaintiff testified in her deposition that Green
informed her that her salary increase was "a done deal" but that
she would be unable to get the increase in 1991 as the university
was in proration. See defendants' exhibit 10, plaintiff's depo.
pp. 38-39. Apparently the increase was not "a done deal" or, if
it was, it became an "undone deal" because the June 1991
recommendations to President McGee were not implemented.

Before October of 1994, JSU reclassified certain employees
and developed salary ranges for the classifications and plaintiff
was classified as Administrative/Professional II with a salary
range from $27,000 minimum to $54,000 maximum. See plaintiff's
exhibit 25; defendants' exhibit 7, Harper depo. pp. 116-117.  In
October of 1994, Randy Harper sent plaintiff a memo stating that
the salary range for position of manager of university
telecommunications on the Administrative/Professional schedule
was $25,750.00 - $49,955.00 and that plaintiff's salary was
$25,178.00. See plaintiff's exhibit 7.  Harper made a
handwritten note on the memo for plaintiff to discuss her salary
with him.  See id. According to plaintiff, Harper met with
plaintiff about this memo and told her that adjusting her salary
would not be a problem.  See defendants' exhibit 10, plaintiff's

13

depo. p. 71.

According to plaintiff, in January of 1995 she complained about her salary to Bascom Woodward, the EEO compliance officer, who instructed her to make a written demand to her immediate supervisor Randy Harper regarding her salary increase. See defendants' exhibit 10, plaintiff's depo. p. 80. In February of 1995, plaintiff submitted a memo to Randy Harper requesting a salary increase based on the April 1991 telecommunication department review and "in the interest of fairness and equality." See plaintiff's exhibit 10. According to plaintiff, she received no response from Harper and then submitted a memo describing discriminatory treatment to Bascom Woodward in May of 1995. See defendants' exhibit 10, plaintiff's depo. pp. 83-84, 95-96; plaintiff's exhibit 11. On May 10, 1995, Harper met with plaintiff and according to plaintiff, Harper told her that she was not the only underpaid employee at the university and that if she was successful in getting the requested pay raise she would not get any other raise. See defendants' exhibit 10, plaintiff's depo. p. 101. In October of 1995, plaintiff received a merit raise and her salary was increased from $25,178.00 to $27,192.00. See defendants' exhibit 1, exhibit C to Dempsey affidavit.

Plaintiff filed an EEOC charge in October of 1995 and filed

14

her complaint in April of 1997.  See plaintiff's exhibit 12.

According to plaintiff's deposition and her complaint, the plaintiff alleges that she was discriminated against by JSU because of her sex because (1) when she was initially hired she earned less than her male predecessor; (2) Keith Riley, a male communications technician who is plaintiff's subordinate earns more than she does; (3) certain similarly situated male employees earn more than her; and (4) she has been retaliated against for filing an EEOC charge.

**Plaintiff's Initial Hiring**

Plaintiff asserts that in 1988 she was hired at a salary approximately $6,000 less than her male predecessor and that this constitutes discrimination based on her sex.[4]  The defendants' state that plaintiff was paid less than her male predecessor but that the predecessor's position was in fact a combination of the

---

[4]Defendants argue that plaintiff's claim is untimely as plaintiff thought she was being discriminated against in pay because of her sex in 1988, but failed to file an EEOC charge until 1995.  "When the claim is one for discriminatory wages, the violation exists every single day the employee works."  Calloway v. Partners Nat. Health Plans, 986 F.2d 446, 448-449 (11th Cir. 1993).  If plaintiff was discriminated against in pay because of her sex, then the violation would be continuing and plaintiff's claim would be timely.  As the court explains, however, plaintiff has failed to put forth evidence that establishes discrimination in pay because of sex.

15

job plaintiff filled and another job filled by a different

employee.  In his affidavit, Gary Dempsey, Director of Personnel

Services at JSU, stated that plaintiff's predecessor performed

both the position held by plaintiff and the technician position

now held by Keith Riley.  See defendants' exhibit 1, Dempsey

affidavit.  In her affidavit, Cheryl Norred, recording secretary

to JSU Personnel Council, stated that John Garner, plaintiff's

predecessor, held a position which incorporated both the jobs

held by plaintiff and the department technician, Keith Riley, and

that the Personnel Council approved the division of John Garner's

job when he left the university.  See defendants' exhibit 4,

Norred affidavit.  Attached to Cheryl Norred's affidavit are the

Personnel Council meeting minutes from January 19, 1988 which

make clear that Claude Gaddy was requesting to downgrade the

position of university telecommunications manager and to upgrade

the position of communications equipment technician and which

make clear that Gaddy had been to the Personnel Council to

discuss the two positions in July of 1987 and in October of 1987,

which was several months before plaintiff applied for the part-

time job at the bookstore and before Claude Gaddy first

approached plaintiff about a job opening.  See defendants'

exhibit 4, exhibit 1 to Norred affidavit.  While plaintiff

16

asserts that Gaddy selected her for the job and then went to the Personnel Council to change the salary structures, she puts forth no evidence to refute that the predecessor's job was divided into two positions prior to plaintiff's initial application for employment at JSU.  As Gaddy discussed the status of the manager and technician positions prior to talking to plaintiff in December of 1987, he could not have acted in a discriminatory manner in lowering the salary simply because plaintiff was taking the position.

Plaintiff argues that the fact that the job description for plaintiff's predecessor was unchanged shows that she was paid less for performing the same work.  However, the decision to divide the position was made at some point before Gaddy discussed employment with plaintiff and the fact that the job description was unchanged is more likely explained as slowness in administration than an act of discrimination.  Regardless of what the job description stated, at some point before plaintiff began her employment, the Personnel Council's decision was to divide the predecessor job into two jobs and the pay for each would be less than the predecessor job's salary.

Plaintiff asserts that Claude Gaddy's comment that he needed a "good woman" to run the office is evidence of discrimination

17

based on sex.  This comment standing alone is not enough to

refute the evidence that the reason plaintiff was paid less than

her male predecessor was not because of discrimination based on

sex, but rather a prior decision to divide the predecessor's

position into two jobs.

## Plaintiff's Pay versus Keith Riley's Pay

Plaintiff alleges that JSU discriminated against her because

of her sex because Keith Riley, a male communications technician

and plaintiff's subordinate, earns more money than plaintiff.

Defendants argue that plaintiff's job duties are not comparable

to Riley's duties.  In her deposition, plaintiff stated that she

believes that she is the only supervisor who makes less than her

subordinate.  See defendants' exhibit 10, plaintiff's depo. p.

66.  According to the affidavit of Gary Dempsey, the situation

where a supervisor earns less than their subordinate occurs often

at the university.  See defendants' supplemental submission

exhibit A.  For example, the Dean of the College of Commerce and

Business Affairs earns less than certain business professors and

staff managers often earn less than their assistants.  See id.

Plaintiff stated in her deposition that she could only do a

portion of the work Riley performs.  See defendants' exhibit 10,

plaintiff's depo. p. 67.  The fact that plaintiff admits she is

18

unable to perform all of the jobs that Riley performs gives

credence to the argument by JSU that the reason Riley is paid

more than plaintiff is that they are not similarly situated

employees and that Riley has more technical duties than

plaintiff.   The university may value technical skills more than

managerial skills and this court will not comment on whether this

is correct, but points out that paying technicians more than

managers, standing alone, is not evidence of discrimination based

on sex.[5]   Furthermore, plaintiff was instrumental in Riley

obtaining a pay increase to an amount greater than plaintiff's

salary.   See defendants' exhibit 10, plaintiff's depo. p. 33.   If

plaintiff felt that she should earn more than Riley it is curious

that she would approve a raise to an amount greater than that of

her own salary.

Plaintiff expressed concern in her deposition that Riley

reports to her and that she evaluates him while he makes more

than she does, calling the situation "ridiculous".   See

---

[5]As noted earlier, several months before plaintiff first
applied for a part-time job at the bookstore and before plaintiff
first talked with Claude Gaddy about a job as manager of
telecommunications, the Personnel Council likely had under
consideration the downgrading of the position of
telecommunications manager and the upgrading of the position of
communications equipment manager.

19

defendants' exhibit 10, plaintiff's depo. p. 66.  Whether or not

the situation is "ridiculous" is not in question, but whether or

not plaintiff was paid less because of her sex is in question.

The court will not delve into the procedures or policy decisions

of the university except to determine if these procedures or

policies in fact violate federal employment discrimination laws,

and plaintiff does not offer any evidence that because her male

subordinate earns more than her that she is discriminated against

because of her sex.  Plaintiff only explains that she is

dissatisfied with her pay and that she is frustrated with the

university, but this dissatisfaction and these frustrations do

not amount to evidence that she was discriminated against because

of her sex.

**Plaintiff versus other employees**

Plaintiff alleges that JSU discriminated against her because

of her sex because certain male employees who hold other

positions at JSU which plaintiff considers comparable to hers

earn more than plaintiff.[6]  Plaintiff asserts that these male

_____

[6]The plaintiff also argues that the fact that from October
of 1994 until October of 1995 she was paid less than the minimum
Administrative/Professional II salary and less than the other
employees in this classification is evidence of pretext.  The
plaintiff was told by Randy Harper in October of 1994 that JSU
would be able to raise her salary to the minimum for her job

employees are similarly situated to her and argues that her
position requires the same or more skill, responsibility and
technical knowledge.  Defendants argue that plaintiff is not
similarly situated to these employees.

**Allen McCurry**

Plaintiff argues that Allen McCurry is similarly situated.
Allen McCurry holds a B.S. degree in math and physics and a
Master's degree in Business Administration, serves as manager of
administrative computer services and supervises twenty employees
directly.  See defendants' exhibit 2, exhibit 4 to Davis
affidavit.  Plaintiff, who never completed any college courses,
supervises only two full-time employees.  See plaintiff's exhibit
1.  The fact that McCurry supervises twenty full-time employees
while plaintiff supervises two full-time employees demonstrates
that they are not similarly situated.  The court is satisfied

---

classification and though it did take one year to complete,
plaintiff did in fact get the salary adjustment.  See defendants'
exhibit 10, plaintiff's depo. p. 71; defendants' exhibit 1,
exhibit B to Dempsey affidavit.  As plaintiff has failed to offer
evidence of other similarly situated employees who were making
less than the minimum salary and classified as
Administrative/Professional II and who after October of 1994 were
more promptly given the salary adjustment to the minimum level,
plaintiff has failed to demonstrate to the court why the year it
took to get plaintiff's salary adjusted is not explained as slow
administration or clerical error rather than discrimination based
on sex or pretext for such discrimination.

21

that supervising twenty employees obviously involves more responsibility than supervising two employees.  Plaintiff has failed to offer evidence supporting the argument that she and McCurry are similarly situated employees.[7]

**Sean Ponder**

Plaintiff argues that Sean Ponder is similarly situated. Sean Ponder holds a B.S. degree in computer science and serves as manager of academic computer services.  See defendants' exhibit 8, Ponder depo. pp. 7-8.  Ponder supervises four full-time employees and ten to twenty-five part-time employees.  See id. at 10, 20, 31, 69.  Again, as with McCurry, the court is satisfied that supervising four full-time and ten to twenty-five part-time employees obviously involves more responsibility than supervising two full-time employees which plaintiff does.  Plaintiff has failed to offer evidence supporting the argument that she is similarly situated to Sean Ponder.

The plaintiff's complaint that the managers in the computer department, i.e., McCurry and Ponder, earn more than the manager of the telecommunications department seems more likely a

---

[7]Plaintiff seems to concede that McCurry should earn more money than her as she stated in her deposition that she did not think she should earn more money than McCurry.  See defendants' exhibit 10, plaintiff's depo. p. 126.

22

complaint about the priorities of the university rather than a complaint about discrimination in pay based on sex.[8]  The court also notes that Ponder and McCurry have college degrees and McCurry a master's degree while plaintiff holds only a high school degree.  The marked differences in the education background between plaintiff and McCurry and Ponder demonstrates further why plaintiff is not similarly situated to the two male employees, particularly where all are employed by an institution of higher learning.

## Retaliation

In order to establish a *prima facie* case of retaliation under Title VII, "the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Little v. United Technologies,

---

[8]In her brief, the plaintiff alludes to other alleged comparators who are also classified as Administrative/Professional II; however, plaintiff simply lists the person, position and salary and does not provide any other information to the court to demonstrate that these employees are similarly situated to plaintiff.  In her evidentiary submissions, the plaintiff submits various portions of these employees' personnel files, but these are also insufficient to demonstrate that these employees are similarly situated to plaintiff or that because these employees earn more money than plaintiff it is because of her sex.

23

103 F.3d 956, 959 (11th Cir. 1997). In her complaint, plaintiff alleges that she was retaliated against for complaining to the EEO compliance officer about sex discrimination and violations of the Equal Pay Act. In her deposition, plaintiff testified that her supervisor, Randy Harper, told her that she was not the only employee who was underpaid at the university and threatened that if she did get a raise it would be the last of the raises for the telephone center. See defendants' exhibit 10, plaintiff's depo. p. 101. The meeting where Harper allegedly threatened plaintiff occurred in May of 1995 and in October of 1995, plaintiff received a merit raise and since that time has received cost of living adjustments.[9] See id. at 100; defendants' exhibit 1, exhibits A and C to Dempsey affidavit. Because plaintiff has received raises since Harper's threat, plaintiff has not experienced an adverse employment action because no action has been taken against her since Harper allegedly made the threat. Furthermore, plaintiff did not file an EEOC complaint until October of 1995 and although plaintiff filed an internal

---

[9]Plaintiff argues that the cost of living adjustments are not raises because they are administered campus-wide; however, these adjustments have the effect of raising plaintiff's salary and if Harper's threat was realized, plaintiff would be denied these as well as any other form of a raise.

24

grievance and made Bascom Woodward, the EEO compliance officer,

aware of her complaints, it is unclear whether at the May meeting

with Harper that Harper was aware that plaintiff was claiming

that she was discriminated against because of sex.  See

plaintiff's exhibit 11; defendants' exhibit 10, plaintiff's depo.

pp. 85-98.[10]  Harper called the meeting and it is clear that he

was aware that plaintiff was not happy with her pay and wanted a

raise but it is not clear that Harper knew that plaintiff was

complaining of discrimination in pay based on sex.  See

defendants' exhibit 10, plaintiff's depo. p. 100-101.  In order

to prove a *prima facie* case of retaliation, the plaintiff must

establish that the employer was aware of the protected activity

at the time the adverse employment action was taken.  See

Reynolds v. CSX Transportation, Inc., 115 F.3d 860, 868 (11th

Cir. 1997), *petition for cert. filed*, 66 U.S.L.W. 3324 (U.S.

October 27, 1997); Goldsmith v. City of Atmore, 996 F.2d 1155,

1163 (11th Cir. 1993).  Even assuming the verity of plaintiff's

---

[10]Although plaintiff testifies that she met with Bascom
Woodward, the EEO compliance officer, several times and submitted
a report to him outlining her complaints, Woodward states in an
affidavit that he never met with plaintiff to discuss her
complaints of sex discrimination.  See defendants' exhibit 5,
Woodward affidavit.  For purposes of summary judgment, the court
will assume the verity of plaintiff's testimony.

rendition of the facts, and the court believes it is likely

stretching the point to assume all of plaintiff's rendition,

plaintiff has failed to put forth evidence demonstrating a *prima*

*facie* case of retaliation as she has suffered no adverse

employment action.

**42 U.S.C. § 1983**

As defense counsel notes, plaintiff's complaint states less

than clearly how suit is brought against the individual

defendants Don Thacker, Dr. Harold McGee and Randy Harper.

However, in the plaintiff's brief, plaintiff's counsel states

that the suit is not brought against McGee, Thacker, and Harper

in their official capacities but in their individual capacities.

McGee, Thacker, and Harper are the individuals upon whose

activity plaintiff makes her Title VII claim against JSU.   As

part of her equal protection claim under section 1983, plaintiff

must prove the element of intent.   Washington v. Davis, 426 U.S.

229 (1976).   As earlier discussed, the intent element is wholly

lacking in plaintiff's Title VII claim against her employer JSU.

The intent element would not be lacking as to those claims if

plaintiff had been able to demonstrate an intent on the part of

any of the three individual defendants, McGee, Thacker and

Harper, to discriminate against plaintiff on the basis of her

26

sex.  Plaintiff has failed to offer evidence demonstrating the intent or activities of any of the three individual defendants that denied her equal protection.[11]

The court is satisfied that there is no genuine issue of material fact and that plaintiff has failed to set forth evidence sufficient to withstand the motion for summary judgment filed by the defendants and directed at all of plaintiff's Title VII and 42 U.S.C. § 1983 claims.  The motion as directed at those claims is due to be granted.  A separate final order will be entered.

**Equal Pay Act**

The defendant JSU seeks to dismiss the plaintiff's Equal Pay Act claim because JSU is entitled to immunity pursuant to the Eleventh Amendment.  The court is satisfied that Congress did not have the power under the equal protection clause of the Fourteenth Amendment to abrogate states' Eleventh Amendment immunity with regard to the Equal Pay Act.  See Larry v. Bd. of Trustees of University of Alabama, 975 F. Supp. 1447 (N.D. Ala. 1997).  As JSU is a part of the state university system, and is entitled to Eleventh Amendment immunity, plaintiff's Equal Pay

---

[11]The court notes that defendant Don Thacker had no supervisory authority over plaintiff and was not in a position to approve or disapprove plaintiff's pay.  See defendants' exhibit 3, Thacker affidavit.

Act claims is due to dismissed for lack of jurisdiction.[12]   A

separate order will be entered.

DONE this ___20___ day of May, 1998.

SENIOR UNITED STATES DISTRICT JUDGE

---

[12]Assuming the court has jurisdiction as to the Equal Pay Act
claim, the motion for summary judgment as to the Equal Pay Act
claim would be due to be granted as plaintiff has been unable to
point to a single male comparator with the same or less
responsibility and skill as plaintiff who was paid more than
plaintiff.  See the court's earlier discussion regarding
plaintiff's initial hiring and regarding the pay of Keith Riley,
Allen McCurry, Sean Ponder and other persons classified as
Administrative/Professional II.